**UNITED STATES of America, Plaintiff,**

v.

**Geoffrey R. EDMONDS, Pauline Edmonds, Cyril J. Worm, Jr., Defendants.**

**CR No. 94–241–FR.**

United States District Court, D. Oregon.

Jan. 25, 1996.

Kristine Olson, United States Attorney, Neil J. Evans, Assistant United States Attorney, Portland, Oregon, for Plaintiff.

Stephen R. Sady, Chief Deputy Federal Public Defender, Dennis N. Balske, Assistant Federal Public Defender, Portland, Oregon, for Defendant Geoffrey R. Edmonds.

David M. Audet, Hillsboro, Oregon, for Defendant Pauline Edmonds.

Norman Sepenuk, Portland, Oregon, for Defendant Cyril J. Worm, Jr.

FRYE, Judge:

The matter before the court is the motion of the defendant, Geoffrey R. Edmonds, to suppress statements and derivative evidence (# 70–1).

## BACKGROUND

On January 16, 1992, James McLaughlin, an assistant attorney general of the State of Oregon, filed a motion in the United States Bankruptcy Court for the District of Oregon on behalf of the State of Oregon, a creditor of Dominion Capital, Inc., entitled "Renewed Motion for Order Directing Geoffrey A. Edmonds to Appear and Produce Documentary Evidence." The State of Oregon sought an order from the bankruptcy court directing Edmonds to appear to be examined under oath on January 23, 1992. Exhibit E in Support of Defendant's Motion to Suppress and Motion to Dismiss.

On January 17, 1992, the bankruptcy court signed an order directing Edmonds to appear to be examined under oath on January 23, 1992. Service was properly made upon Edmonds. The certificate of service accompanying the order directing Edmonds to appear to be examined under oath on January 23, 1992 does not show, however, that the order was served on Gordon Carey, the attorney who represented Edmonds.

Two days before the taking of his deposition, Edmonds advised McLaughlin by telephone that his counsel, Gordon Carey, would not be available at the time set for the taking of his deposition. Edmonds requested that the deposition be set for another time. McLaughlin refused Edmonds' request.

On January 23, 1992, Edmonds appeared for the taking of his deposition in the bankruptcy case of *In re Dominion Capital, Inc.,* No. 390–35708–P7. While Edmonds was an officer of Dominion Capital, Inc., he had not personally filed a petition in bankruptcy. At the time of the taking of his deposition, Edmonds was not a defendant in any criminal proceeding.

The primary interrogator at the taking of Edmonds' deposition was James McLaughlin, an assistant attorney general of the State of Oregon. Also present at the taking of Edmonds' deposition was Valencia Tolbert, a deputy city attorney for the City of Portland; Jeffrey Misley, counsel for the trustee in bankruptcy; S. Ward Greene, counsel for Firestone Financial Corporation and FJM Development Company; Richard Berman, counsel for Portland Community Reinvestment Initiatives, Inc.; and Phillip Emerson, counsel for a creditor, Val Botez.

Before McLaughlin asked Edmonds any questions, he advised Edmonds that Edmonds had an obligation to tell the truth, and that Edmonds "face[d] the potential of a prosecution for perjury by the United States Attorney's office for the District of Oregon" if he did not tell the truth. Exhibit B in Support of Defendant's Motion to Suppress and Motion to Dismiss, p. 5.

Also before McLaughlin asked Edmonds any questions, Edmonds stated:

But I must state on the record as regards to my understanding of the questions is that Mr. Gordon Carey, my attorney, is not here. And he specifically told you on the 10th of the month that he would be gone until the 1st. I called you two days ago to request that this be held when he returns, and you told me that it could not and I had to be here.

You did do your best by saying that you could not give legal advice, but if I didn't show up, there would be sanctions against me. And I want to proceed with any questions or information in this case as fast as is humanly possible, but I feel that my rights are being violated by not being allowed to have legal counseling [sic] here. *Id.* at 8–9.

Knowing that counsel for Dominion Capital, Inc. could not act as Edmonds' personal attorney, McLaughlin began his questioning of Edmonds. Later during the taking of his deposition, Edmonds stated:

There's one thing I would like to say on the record. I don't know how many

hours—it's probably only a couple. It's almost three hours—that I've been giving testimony without the benefit of counsel. And I just want to go on the record that I really do protest that. I think it is very unfair, and I want to state that again at the very end of the deposition.

*Id.* at 98.

At the end of his deposition, Edmonds stated:

I just want to go on record, again, as saying that I think it was unfair for me to have to be at this deposition without the benefit of legal counsel when the party who subpoenaed me knew full well that my attorney was out of town.

*Id.* at 185.

On January 29, 1992, the United States Attorney received a referral from the Office of the United States Trustee, District of Oregon, regarding Edmonds and co-defendant, Cyril J. Worm, Jr., alerting the United States Attorney to possible criminal violations by Edmonds and Worm. The referral from the Office of the United States Trustee does not contain or refer to the deposition of Edmonds given on January 23, 1992.

On February 7, 1992, the United States Attorney received Bankruptcy 2004 exams of a number of individuals, including Edmonds. The Bankruptcy 2004 exam of Edmonds was the deposition that had been taken on January 23, 1992. Neil Evans, an assistant United States attorney, reviewed Edmonds' deposition.

A grand jury investigation was initiated. The grand jury issued more than fifty subpoenas. Agents from the Federal Bureau of Investigation and the Internal Revenue Service interviewed investors, homeowners and numerous business associates involved in Dominion Capital, Inc. All of the business records of Dominion Capital, Inc. were obtained from the trustee in bankruptcy. Those records include lists of property owned by Dominion Capital, Inc. and related individuals, and the identification of bank accounts and other financial information relating to Dominion Capital, Inc. and its principals.

In January of 1993, Special Agent Compton prepared an affidavit in support of an application for a warrant to search the business premises of C.J. Worm. Material from Edmonds' deposition was used by Special Agent Compton to describe the business affairs of Dominion Capital, Inc. This is the only reference to Edmonds' deposition which appears in the records of the investigation of the case.

On July 24, 1994, a federal grand jury returned an indictment against the defendants, Geoffrey R. Edmonds, Pauline Edmonds, and Cyril J. Worm, Jr., charging them with using mail and wire communications in a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

On December 20, 1994, the federal grand jury returned a superseding indictment, charging Edmonds further with the crime of perjury. The statements that Edmonds made in response to questions asked during the taking of his deposition on January 23, 1992 form the basis of the perjury charge in Count 56 of the superseding indictment.

On August 1, 1995, Edmonds moved the court to suppress any statements that he had made during the taking of his deposition on January 23, 1992 on the grounds that his right to counsel had been violated.

On October 30, 1995, the government moved the court to dismiss Count 56 of the superseding indictment and, in so doing, stated that "[t]he government does not intend to introduce evidence of Defendant Geoffrey Edmonds's statement of January 23, 1992, during its case in chief." Motion to Dismiss Count 56, p. 2.

On October 31, 1995, counsel for Edmonds stated in a letter to the court that Edmonds' motion to suppress was not rendered moot by the government's motion to dismiss Count 56 because a resolution of the factual matters alleged in Count 56 is necessary to determine whether derivative evidence should be suppressed and whether the statements may be used as impeachment evidence.

On November 3, 1995, counsel for the government requested in a letter to the court that the court defer ruling on the issue of the

**402**

suppression of derivative evidence in the absence of further briefing on the issue.

On November 9, 1995, counsel for Edmonds requested that the court reserve any ruling as to derivative evidence until discovery was completed.

On November 20, 1995, the court ruled that "[t]he motion of defendant Geoffrey Edmonds to suppress statements as currently filed is moot on the grounds that Count 56 is dismissed from the superseding indictment. The court will not make any ruling regarding derivative evidence or impeachment evidence based upon the record currently before the court." Amended Opinion, p. 12, 905 F.Supp. 827, 832.

On November 30, 1995, Edmonds filed a motion to compel discovery pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny.

On January 9, 1996, this court filed an opinion and an order denying Edmonds' motion to compel discovery, 1996 WL 19432. The court stated:

The court accepts the representations of government counsel and finds that there are no documents for which to compel discovery at this time. The government argues further in the response to Edmonds' motion to compel that, assuming a constitutional violation and that the court orders the Edmonds' statement suppressed, there is no derivative evidence to suppress. In the alternative, the government argues that, if there is some derivative evidence, the well-established exceptions to the exclusionary rule clearly apply. These are issues which the court must resolve which relate to Edmonds' motion to suppress statements and derivative evidence (# 70–1). That portion of the court's order filed on November 16, 1995 finding that Edmonds' motion to suppress statements and derivative evidence (# 70–1) is denied as moot is vacated.

The court will hear legal argument relating to Edmonds' motion to suppress statements and derivative evidence (# 70–1) on January 19, 1996 at 9:30 a.m. The court will determine thereafter whether an evidentiary hearing is required regarding this motion.

Opinion, pp. 7–8.

The court heard legal argument on January 19, 1996 at 9:30 a.m. relating to Edmonds' motion to suppress statements and derivative evidence as scheduled.

## CONTENTIONS OF THE PARTIES

Edmonds contends that the court must address each of the three aspects of his motion to suppress: 1) whether his deposition may be used for impeachment; 2) whether the physical evidence that was disclosed by him may be used; and 3) whether all of the charges in the indictment should be dismissed because the indictment that the government sought was the result of the information illegally obtained from him in the uncounseled deposition.

Edmonds contends that his Fifth Amendment right to due process of law and his Sixth Amendment right to counsel require the suppression of the statements that he made during the taking of his deposition and all of the evidence derived therefrom. Edmonds does not identify any physical evidence which was obtained as a result of the taking of his deposition, but argues that he is entitled to an evidentiary hearing to determine the use of the statements that he made on January 23, 1992 in the decision of the government to prosecute him.

The government first contends that any constitutional violation that may have occurred is obviated by the government's agreement not to use the uncounseled deposition statements against Edmonds in its case-in-chief. Further, the government contends that, assuming that a constitutional violation has occurred and that the court suppressed the statements made by Edmonds, there is no derivative evidence identified by Edmonds to suppress. In the alternative, the government argues that, if there is some derivative evidence, all of the well-established exceptions to the exclusionary rule apply, in that 1) the connection between the improper conduct and the acquisition of the derivative evidence is so attenuated that it dissipates the taint of the improper con-

duct; 2) the derivative evidence was obtained through a source independent of the illegality; 3) the derivative evidence would have been discovered by independent, lawful means; and 4) the federal agents relied in good faith on the facially valid civil deposition.

## ANALYSIS

■ The United States Attorney has stated in writing that "[t]he government does not intend to introduce evidence of Defendant Geoffrey Edmonds's statement of January 23, 1992, during its case in chief." Motion to Dismiss Count 56, p. 2. Edmonds has not identified any physical evidence which was discovered as a result of the taking of his deposition on January 23, 1992. The court must decide then whether the statements made by Edmonds on January 23, 1992 can be used by the government for impeachment purposes if Edmonds testifies at trial.

In a letter to the court dated November 3, 1995, counsel for the government states that "it is well established that even suppressed evidence may be used to impeach a defendant witness." In a letter to the court dated November 9, 1995, defense counsel states that "[whether] the use of statements, even for cross-examination, is permitted depends on the constitutional bases for the court's ruling." Defense counsel cites the court to *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978).

Assuming that the taking of the uncounseled deposition constitutes a violation of Edmonds' constitutional right to counsel and therefore the statement should be suppressed, *Mincey* does not prevent the government from using the statement for impeachment purposes where "the defendant opens the door by reasonably suggesting the line of questioning." *United States v. Martinez,* 967 F.2d 1343, 1347 (9th Cir.1992). In *Mincey,* the United States Supreme Court concluded that a defendant who "had been seriously wounded just a few hours earlier, and had arrived at the hospital 'depressed almost to the point of coma' according to his attending physician," did not exercise "a rational intellect and a free will" when he made statements to law enforcement authorities. 437 U.S. at 398, 98 S.Ct. at 2416.

There is no suggestion or evidence that the statements made by Edmonds in the uncounseled deposition of January 23, 1992 were made involuntarily or were untrustworthy for any reason. At this stage in the proceedings, there are no legal or factual grounds upon which this court would preclude the government from using the statements made by Edmonds in the deposition of January 23, 1992 in its cross-examination of Edmonds, if Edmonds opens the door by reasonably suggesting the line of questioning in his direct examination.

■ The court must further decide whether to conduct an evidentiary hearing regarding the role that the deposition of Edmonds taken on January 23, 1992 played in the decision of the government to proceed with criminal charges against him.

All of the evidence which the government seeks to introduce at trial in this case was obtained through the grand jury investigation from sources independent of Edmonds' uncounseled deposition statements. The grand jury which returned the indictment against Edmonds did not rely upon the uncounseled deposition. The court finds that there are no grounds upon which to order discovery and to hold an evidentiary hearing in order to examine what, if any, role the deposition statements played in causing federal investigators to investigate the case and the United States Attorney to present the facts discovered by the investigation to the grand jury.

## CONCLUSION

The motion of Edmonds to suppress statements and derivative evidence (# 70–1) is denied.